Robert Weeks
Bar No. 025821
rweeks@weekslawoffice.com
**WEEKS LAW OFFICE, PLLC**
130 North Central Suite 305
Phoenix, AZ 85004
Telephone: (480)-331-5726
Facsimile: (480)-907-2244

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>General Motors, LLC Ignition Switch Litigation<br><br>Case No: 14-MD-2543(JMF)<br><br>Southern District of New York | CASE NO. MC-17-42-PHX-DLR<br><br>**RESPONSE TO GENERAL MOTORS LLC'S MOTION TO COMPEL DISCOVERY FROM TOP CLASS ACTIONS LLC** |

Top Class Actions, LLC (hereafter "TCA") submits this response in opposition to General Motors, LLC's (hereafter "GM") Motion to Compel Discovery from Top Class Actions, LLC. The Court should deny GM's Motion to Compel because (1) GM failed to abide by the requirement of Rule 45 that it limit its requests to avoid unnecessary burden on third parties, and (2) to the extent TCA has any information relevant to the underlying claims, TCA gave that information to Lead Counsel, so GM should be able to to obtain the exact same information from the parties in the underlying suit.

As explained below, the subpoena is unduly burdensome, overbroad, and seeks irrelevant information related to TCA's private commercial dealings with persons and entities who are not involved in the underlying litigation. Accordingly, the Court should deny GM's

motion to compel and award TCA its attorneys fees. This Response is supported by the Affidavit of Top Class Actions CEO Scott Hardy, which is attached as Exhibit A.

**I.      Background.**

TCA operates a webpage that advertises for class action lawsuits. It is currently a small operation ran by CEO Scott Hardy plus two other full-time employees. Lead Counsel for the underlying MDL, Hagens Berman, paid to advertise through the TCA webpage for potential plaintiffs in the GM ignition switch class action. If a visitor to topclassactions.com submitted information in response to Lead Counsel's advertisement, then TCA forwarded that information directly to Lead Counsel. Exhibit A at ¶ 6. All advertisements and articles that TCA published are still publicly available on its searchable website. *Id.* at ¶ 5. Currently, a search on topclassactions.com for "GM" results in 1700 separate results. *Id.* at ¶ 7.

GM served TCA with a subpoena for production of documents on April 28, 2017. The subpoena asks for a wide variety of information that is plainly overbroad, unduly burdensome, and irrelevant. TCA served GM with written objections to the subpoena on May 11, 2017. Because TCA served written objections to the subpoena, it was not required to produce anything to GM, or even to search for responsive records, until GM obtained a court order. *Stipp v. CML-NV One, LLC (In re Plise)*, 506 B.R. 870, 878 (9th Cir. 2014)("Having raised timely objections to the subpoenas, Stipp was not required to produce documents, or even search for them, until CML obtained an order directing compliance.")

Although TCA was not required to engage in a meet-and-confer process with GM, it voluntarily agreed to work with GM to find a solution without court intervention. *Games2U, Inc. v. Game Truck Licensing*, LLC, 2013 U.S. Dist. LEXIS 114907, *3, 2013 WL 4046655

(D. Ariz. Aug. 9, 2013) ("[T]he meet-and-confer obligation only attaches to discovery disputes between the Parties....Motions to oppose subpoenas served on non-parties are not subject to the meet-and-confer obligation."). After a telephonic conference, TCA offered to produce only those documents related to the underlying GM ignition switch litigation, if GM would reimburse TCA for the cost of doing so. GM did not accept this offer, but instead asked TCA to submit a cost estimate.

In trying to determine a cost estimate, CEO Scott Hardy determined that the information on potential plaintiffs that TCA sent to Lead Counsel could be obtained and provided fairly easily. Exhibit A at ¶ 6. However, TCA has also received thousands of user submissions on a wide variety of class action issues that are not related to the brief advertising campaign it performed for Lead Counsel. Exhibit A at ¶ 8-9. TCA would have to hire additional staff to search through these records to determine whether they may be relevant to the GM ignition switch recall. Exhibit A at ¶ 9-10. Because TCA is a small operation, it did not have an established process to estimate how long this search would take or what it would cost. TCA notified GM that it had concerns regarding disclosing personal information of third parties who were not represented by Lead Counsel and therefore had not had an opportunity to object to the disclosure themselves. TCA was still in the process of deciding how to respond when GM filed this Motion to Compel.

## II. The Subpoena is Facially Overbroad and Seeks Irrelevant Information.

"A facially overbroad subpoena is unduly burdensome." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). The failure of GM to narrow its requests to a certain time period, or to the claims in the underlying litigation, make the

3

subpoena overbroad on its face. *Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*, 2011 U.S. Dist. LEXIS 112505, *7 (D. Nev. Sept. 28, 2011)("The court finds the subpoena issued to non-party B&H is overbroad on its face in requesting 'any and all documents' for a five-year period of time involving seven different individuals and entities."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)("The subpoena is generally overly broad since it requests information for a ten year period of time, whereas the Import Broker Agreement covers only three years, and seeks information about KSA's commercial business with other nonparties.")

GM's subpoena is far broader than the facially overbroad subpoena in *Painter's Joint Comm.*, which only requested documents from a non-party over a five year period involving seven different entities. Here, GM's subpoena requests <u>all</u> documents and communications relating to <u>dozens</u> of different vehicles, <u>hundreds</u> of specifically named individuals, and <u>all</u> communications with <u>any</u> past or present employee of <u>any</u> law firm that has ever worked on a case involving <u>any</u> GM recall, even if those communications are not related to GM. Although GM acknowledges that the first recall in the underlying litigation occurred in February 2014, the subpoena contains no time limitation on any request.

Further, although GM now argues that it only seeks documents relating to the underlying GM ignition switch recall litigation, the subpoena itself plainly seeks wide swathes of documents that are unrelated to the underlying litigation. These overbroad requests include: all TCA communications with any past or present employees of any law firm that has ever represented someone against GM; all fee agreements between TCA and law firms representing persons against GM; all documents relating to dozens of different

cars; and "any and all documents or communications reflecting advertisements relating to topclassactions.com or any recall issued by General Motors LLC."

Accordingly, on its face the subpoena seeks documents unrelated to the underlying litigation, which makes it both overbroad and unduly burdensome.

**III.     Discovery is Limited to Information Relevant to the Underlying Claims.**

GM does not have the right to use the subpoena power to discover information unrelated to the claims in the underlying litigation, such as business communications between TCA and its advertisers. *United States v. 25.02 Acres of Land*, 495 F.2d 1398, 1403 (10th Cir. 1974)("We hold that the Trial Court did not abuse its discretion in denying appellants discovery of the appraisals rendered by Black on behalf of private parties owning land within the vicinity of the project area who are not parties to the instant litigation."); *Cmedia, LLC v. LifeKey Healthcare*, LLC, 216 F.R.D. 387, 390 (N.D. Tex. 2003)("Requests Nos. 1 and 3 are facially overbroad because they seek extremely broad categories of documents evidencing communications and agreements between Koeppel and LifeKey as well as companies who are not party to the underlying litigation. They also seek information related to Koeppel's business dealings and negotiations."); *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 42 (1st Cir. N.H. 2003).

GM's effort to use the subpoena power to obtain commercial information related to TCA's business dealings and negotiations is improper. GM has failed to demonstrate how such information is relevant to the claims in the underlying GM ignition switch recall litigation. It is not appropriate for GM to use the subpoena power to go on a fishing expedition for evidence of misconduct by Lead Counsel.

**IV.     GM Can Obtain the Same Information From Lead Counsel for the Plaintiffs.**

To the extent that TCA has information relevant to the claims in the underlying litigation, like information submitted by potential plaintiffs, TCA gave that information directly to Lead Counsel. Accordingly, GM should have tried to obtain this information from Lead Counsel for the Plaintiffs before causing inconvenience to a third party. GM's Motion to Compel does not mention that is has tried and failed to obtain these documents from Lead Counsel, which would be a more convenient source. *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) ("Requesting party's failure to demonstrate that it had attempted to obtain documents from party to underlying litigation before serving subpoena on non-party weighed in court's determination that requests were an undue burden."); *TQP Dev. LLC v. Alaska Air Group, Inc.*, 2012 U.S. Dist. LEXIS 172767, *4 (N.D. Ga. Nov. 28, 2012)("[W]here the requested information can also be obtained from a party, courts have taken a more restrictive approach to compelling Rule 45 discovery from a non-party."); *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577, 2007 U.S. Dist. LEXIS 97465, *7-8 (N.D. Cal. July 5, 2007)("Here, the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome -- namely, from Defendants."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) ("Since plaintiffs have not shown they have attempted to obtain these documents from defendant, the Court finds that, at this time, requiring nonparty KSA to produce these documents is an undue burden on nonparty KSA.").

Accordingly, the Court should not order TCA to produce anything unless GM can demonstrate that it cannot obtain the same information from a more convenient source.

### V. Rule 45 Does Not Require Specific Objections.

GM argues that the written objections in TCA's May 11, 2017 letter were "boilerplate" and not sufficiently specific; however, Rule 45 does not require specific objections to subpoenas. GM relies on a list of cases requiring specific objections *between parties* when those parties are conducting discovery under Rules 33 and 34. However, these cases are inapposite, because both Rules 33 and 34 require that the grounds for an objection be stated "with specificity." Subpoenas, on the other hand, are governed by Rule 45, which does not contain the same requirement for specific objections.

Here, TCA satisfied its obligation under Rule 45 by serving specific objections to the first seven subpoena requests, and generally objecting to the requests that did not include any limitation on time or subject matter. The subpoena's eighth demand for "Any and all documents or communications reflecting advertisements relating to topclassactions.com or any recall issued by General Motors LLC" would require TCA to produce all documents related to any advertisement without limitation. Accordingly, this request is overbroad on its face and is covered by TCA's general objection.

### VI, Top Class Actions Requests Its Attorneys' Fees.

The Court should award TCA its attorneys fees to reimburse it for the cost of fighting to narrow GM's facially overbroad subpoena. Rule 45 states:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

GM failed to abide by this requirement. It is clear from the face of the subpoena that GM did not narrow its requests to information relevant to the underlying lawsuit, nor is there any indication that GM first tried and failed to obtain this information from Lead Counsel. It is not fair for GM to serve a subpoena with grossly overbroad requests, and then put the expense and burden on the Court and TCA to narrow GM's requests to something reasonable.

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused... Fighting a subpoena in court is not cheap, and many may be cowed into compliance with even overbroad subpoenas, especially if they are not represented by counsel or have no personal interest at stake." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-1075, (9th Cir. 2003). Accordingly, TCA requests its reasonable attorney's fees spent objecting to the subpoena and responding to this Motion to Compel.

## VII. Conclusion.

Based on the foregoing, TCA respectfully requests for the Court to deny GM's Motion to Compel based on GM's failure to narrowly tailor its requests and its failure to first attempt to obtain the information from the parties in the underlying litigation. TCA also requests for the Court to order GM to reimburse it for its attorneys fees spent in responding to GM's subpoena.

**DATED** this 31st Day of July, 2017,

                          Weeks Law Office, PLLC

                            /s/ Robert Weeks
                          Robert Weeks

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of July, 2017, I caused the attached Response to General Motors' Motion to Compel to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing. A copy of the foregoing was sent via first class mail to:

Megan Fisher
Bowman and Brooke
Suite 1600 Phoenix Plaza
2901 N Central Ave
Phoenix, AZ 85012

           /s/ Robert Weeks